UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERRY MILES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:21-cv-00526-JPH-TAB ) |
| SAVINO, | ) ) |
| Defendant. | ) ) |

**ORDER GRANTING DEFENDANT'S UNOPPOSED MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

The plaintiff, Terry Miles, is incarcerated at the Correctional Industrial Facility. The defendant, Dr. Yoko Savino, was the physician responsible for treating Mr. Miles from 2019 to 2021. Mr. Miles alleges that Dr. Savino was deliberately indifferent to his shoulder injury.

Dr. Savino has filed an unopposed motion for summary judgment. No reasonable jury could conclude from the record that Dr. Savino was deliberately indifferent to Mr. Miles' serious medical needs. Therefore, Dr. Savino's motion for summary judgment is **granted**.

I.
**Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Cmty. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine

1

dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Mr. Miles failed to respond to the motion for summary judgment, so facts alleged in the motion are "admitted without controversy" so long as support for

them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still ha[s] to show that summary judgment [i]s proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

## II.
## Factual Background

Dr. Savino has moved for summary judgment under Rule 56(a), and the Court views and recites the evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). Because Mr. Miles has not responded, the Court treats Dr. Savino's supported factual assertions as uncontested. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020); S.D. Ind. L.R. 56-1(b), (f).

In January 2018, while incarcerated at a different Indiana Department of Correction (IDOC) facility, Mr. Miles underwent surgery to repair an injury to his right shoulder. Dkt. 31-1 at 66. He returned to Eskenazi Hospital for a follow-up appointment two weeks after his operation and again in August 2018. *Id.* During that appointment, Mr. Miles reported that he had regained range of motion that he lost before the surgery but continued to experience shoulder pain and "electrical pain" that shot from his elbow to his hand and numbed his fingers. *Id.* The nurse practitioner who examined Mr. Miles that day found that he was likely suffering from biceps tendinitis, treated him with a steroid injection, and

3

provided an "elbow pad" to keep his arm straight at night. *Id.* at 67. She declined to order a new MRI, but she called for him to return in eight to twelve weeks for further examination. *Id.* at 68.

Four months later, Mr. Miles underwent a neuro-diagnostic study on his right arm. *Id.* at 69–71. The physician who reviewed the results of that study found no indication of neuropathy, myopathy, or radiculopathy. *Id.*

The IDOC transferred Mr. Miles to the Correctional Industrial Facility (CIF) in 2019. Dkt. 31-4 at 3 (Miles Dep. at 6:16–18). There, Dr. Savino first met with Mr. Miles in February 2020. Dkt. 31-1 at 1. Records from that visit indicate that she focused on Mr. Miles's blood pressure and do not include any information about his shoulder. *Id.* at 1–3.

Nurse Kelly Johnson examined Mr. Miles at sick call on April 25, 2020, after he complained of shoulder pain. Dkt. 31-1 at 4–7. Mr. Miles reported that his shoulder was in constant pain that worsened when he moved his arm and limited his range of motion. *Id.* at 6. She noted Mr. Miles's ability or inability to move his arm in several directions. *Id.* She referred Mr. Miles for further examination by a doctor. *Id.*

Dr. Savino met with Mr. Miles on April 30 for approximately 40 minutes. Dkt. 31-1 at 8–10. Dr. Savino's notes indicate that they spent the majority of the appointment discussing whether Mr. Miles's shoulder injury made him eligible for a bottom bunk pass. *Id.* at 9. According to her notes, she reviewed Mr. Miles's medical records from 2018, which would have included records of his surgery and follow-up appointments. *Id.* Dr. Savino prescribed naproxen for daily use

4

and Tylenol to be used as needed for pain, but she provided no other treatment. *Id.*

Dr. Savino met with Mr. Miles on May 22 concerning his blood pressure. Dkt. 31-1 at 11–13. Her notes indicate that they discussed Mr. Miles's shoulder pain, but only in the context of his request for a bottom bunk pass. *Id.* at 12. Dr. Savino did not otherwise address Mr. Miles's shoulder pain at this appointment.

Dr. Savino met with Mr. Miles concerning his shoulder injury on June 3. Dkt. 31-1 at 14–16. According to her notes, Mr. Miles reported that the oral pain medications she had prescribed were not providing relief. *Id.* at 15. He also reported that steroidal injections and physical therapy had not been effective in the past. *Id.*

Two days later, Dr. Savino requested that Mr. Miles be referred for outpatient examination by an orthopedist. Dkt. 31-1 at 17–19. Dr. Savino did not have authority to arrange that referral herself but required approval from another Wexford official. Dkt. 31-3 at ¶ 21. She noted Mr. Miles's surgery, wrote that pain limited his range of motion, and added that he described physical therapy, oral pain medicines, and steroidal injections as ineffective. Dkt. 31-1 at 18.

On June 14, Dr. Mitcheff "deferred" Dr. Savino's outpatient referral request. Dkt. 31-1 at 20; dkt. 31-3 at ¶ 10. Dr. Mitcheff's response is not clear,[1] but it appears that he asked for additional information—specifically, what kind

---

[1] "Dr. Mitcheff continued ATP on this request for additional information: What type of injection did i/m pt receive, stating Orthopedist recommended repeat injection and PT?" Dkt. 31-1 at 20.

5

of injection Mr. Miles tried previously and whether the surgeon recommended multiple injections or physical therapy. Dkt. 31-1 at 20.

Dr. Savino met with Mr. Miles on June 19, two weeks after their last visit and only days after she received Dr. Mitcheff's response. Dkt. 31-1 at 21–23. Dr. Savino's notes reflect that she reviewed Mr. Miles's medical records but do not show whether she followed up to provide Dr. Mitcheff the information he requested. *Id.* at 22. They also reflect that Mr. Miles refused a steroidal injection, insisted on referral to an orthopedist, and conveyed willingness to consider more physical therapy. *Id.* Dr. Savino wrote that she would consider referring Mr. Miles for additional physical therapy. *Id.*

Dr. Savino conferred with Ms. Miller, Mr. Miles's former physical therapist, on June 30. Dkt. 31-1 at 26–27. Ms. Miller opined that further physical therapy was not likely to be beneficial. *Id.* at 26.

In August 2020, Dr. Savino met with Mr. Miles concerning pain in his right hand and high cholesterol. Dkt. 31-1 at 28–33. Treatment notes from an October 1 visit refer to Mr. Miles's shoulder pain, but the focus of the appointment appears to have been on wrist pain and Mr. Miles's ability to write during classes. *Id.* at 34–36. They met again on November 5 and discussed Mr. Miles's shoulder and wrist pain and his request to be placed on "medical idle" status. *Id.* at 38–40. Dr. Savino requested x-rays of Mr. Miles's shoulder, hand, and spine after this appointment but did not alter Mr. Miles's course of treatment. *Id.* at 37. If these x-rays were taken, they do not appear in the record.

Mr. Miles met with Dr. Savino on February 19, 2021, to discuss right shoulder and hand pain. Dkt. 31-1 at 44–46. According to Dr. Savino's notes, Mr. Miles requested referral for an MRI and complained that his pain prevented him from writing. *Id.* at 45. This appointment did not end with any change in Mr. Miles's course of treatment.

A month later, Mr. Miles met with Dr. Savino regarding foot pain. Dkt. 31-1 at 47–49. According to her notes, Mr. Miles reported that his shoulder was "okay" and did not bring up his shoulder pain. *Id.* In early May, however, he returned and reported that his shoulder pain was preventing him from taking classes, going to recreation, working a job, or even brushing his teeth with his right hand. *Id.* at 49–51.

Dr. Savino met with Mr. Miles twice in June 2021 concerning foot pain, high blood pressure, and high cholesterol. Dkt. 31-1 at 52–57. On July 16, Dr. Savino requested that Mr. Miles be referred for outpatient physical therapy. *Id.* at 58–60. It is not clear from the record what prompted Dr. Savino to submit this request. *Id.* Mr. Miles resumed physical therapy ten days later. *Id.* at 61–65.

Mr. Miles filed a three-page complaint in this Court on March 5, 2021. Dkt. 1. The complaint specifically referred to one interaction with Dr. Savino— an appointment in February 2021—but the Court framed Mr. Miles' claims and allegations as follows at screening:

> The complaint alleges that the plaintiff has been attempting to get medical treatment for a severe shoulder injury, but Dr. Savino has failed to provide any pain medication or an MRI. The plaintiff seeks injunctive relief, specifically medical care for his shoulder, and compensatory and punitive damages. Applying the screening

>   standard to the factual allegations in the complaint, the
>   Eighth Amendment claim of deliberate indifference shall proceed
>   against Dr. Savino.

Dkt. 9 at 2.

Counsel for Dr. Savino deposed Mr. Miles in April 2022. Dkt. 31-4. Mr. Miles's deposition testimony shows two common complaints regarding Dr. Savino's approach to his shoulder injury. First, she never thoroughly examined his shoulder. *See id.* at 5–6 (Miles Dep. at 14:4–8, 18:2–19:7). Second, she never referred him for examination by an orthopedist, even though the orthopedist recommended that Mr. Miles return for a follow-up appointment and no other treatment had proven effective. *See id.* at 5–6 (Miles Dep. at 17:11–17, 19:12–17).

Dr. Savino filed her summary judgment motion on May 23, 2022. Dkt. 29. Mr. Miles has not responded.

### III.
### Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is

8

subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

Dr. Savino concedes for purposes of the summary judgment motion that Mr. Miles's shoulder injury and ongoing pain constitute a serious medical need. Dkt. 30 at 13. To survive summary judgment, then, Mr. Miles must show that Dr. Savino acted with deliberate indifference—that is, that she consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Moreover, prisoners are "not entitled to demand specific care." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). To survive summary judgment, Mr. Miles "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted).

In the context of medical treatment, some examples of deliberate indifference include when a provider:

- renders a treatment decision that departs so substantially "from accepted professional judgment, practice, or standards as to demonstrate that" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*
- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.
- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).
- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

From the designated evidence, no jury could reasonably find that any of these examples describes Dr. Savino's treatment of Mr. Miles' shoulder injury.

Similarly, Mr. Miles has not designated evidence showing that Dr. Savino ignored Mr. Miles's injury, persisted in a stagnant treatment plan, or chose an easy treatment plan over one that appeared more likely to offer relief. *See Petties*, 836 F.3d at 730. On the contrary, the designated evidence shows that Dr. Savino saw Mr. Miles regarding shoulder pain eight times in just more than a year. *See* dkt. 31-1 at 8–10, 11–13, 14–16, 21–23, 34–36, 38–40, 44–46, 49–51. In the course of that treatment of Mr. Miles' shoulder, Dr. Savino requested outpatient referrals to an orthopedist and a physical therapist, requested x-rays, and consulted with a physical therapist who had previously worked with Mr. Miles. *Id.* at 17–19, 26–27, 37, 58–60. She provided Mr. Miles with pain medication and offered an injection (which he declined). *Id.* at 10, 22.

Moreover, Dr. Savino requested that Mr. Miles be referred for outpatient examination by an orthopedist, at his request. Dkt. 31-1 at 17–19. But she did not have authority to make the outpatient examination happen—her recommendation had to be approved by Dr. Mitcheff, who did not give his

10

approval. Dkt. 31-3 at ¶ 21. To prevail, Mr. Miles would have to designate evidence that Dr. Savino made a conscious, deliberate choice to withhold treatment—despite Dr. Mitcheff's decision—rather than mere negligence, oversight, forgetfulness, or even recklessness. *See Petties v. Carter*, 836 F.3d at 728. He has not done so.

The designated evidence shows that over a year, Dr. Savino saw Mr. Miles many times and recommended multiple courses of treatment for his shoulder. There is no designated evidence from which a reasonable jury could find her deliberately indifferent.

## IV.
## Conclusion

Dr. Savino's motion for summary judgment, dkt. [29], is **granted** and this action is terminated. Final judgment will issue consistent with this order.

**SO ORDERED.**

Date: 3/31/2023

                        *James Patrick Hanlon*
                        James Patrick Hanlon
                        United States District Judge
                        Southern District of Indiana

Distribution:

TERRY MILES
141256
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

All Electronically Registered Counsel